UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

UNITED STATES OF AMERICA,

Plaintiff,

v.

MICHAEL D. JACKSON,

Defendant.

Criminal No. 17-60-KKC-CJS-1
Civil No. 19-293-KKC-CJS

**REPORT AND RECOMMENDATION**

*** *** *** *** ***

Michael D. Jackson, proceeding *pro se*, moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. (R. 114). This matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b). *See also* Rule 10 of the Rules Governing § 2255 Proceedings ("A magistrate judge may perform the duties of a district judge under these rules, as authorized by 28 U.S.C. § 636."). The United States has filed a Response to Jackson's § 2255 Motion (R. 142). Jackson did not file a reply. For the reasons set forth below, it will be recommended that Jackson's § 2255 Motion **be denied.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2017, Jackson was indicted in United States District Court for the Eastern District of Kentucky for one count of knowingly and intentionally conspiring to possess with intent to distribute fentanyl and cocaine in violation of 21 U.S.C. § 846; one count of knowingly and intentionally possessing with intent to distribute fentanyl, crack cocaine, and cocaine in violation of 21 U.S.C. § 841(a)(1); one count of knowingly possessing a firearm, having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1); one count of knowingly possessing firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1); and one count of

using and carrying a firearm during and in relation to drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1). (R. 1 at Page ID 1-5).

On April 16, 2018, Jackson, pursuant to a Plea Agreement, pleaded guilty to conspiracy to possess with the intent to distribute 40 grams of a mixture or substance containing fentanyl, more than 28 grams of cocaine base, and more than 500 grams of a mixture or substance containing cocaine, in violation of 21 U.S.C. § 846; possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). (R. 74; R. 78). In the Plea Agreement, Jackson waived his right to appeal his guilty plea, conviction, and sentence with the exception that he could appeal the sentence "if the length of the term of imprisonment exceeds the higher of the advisory sentencing guidelines range as determined by the Court at sentencing or the statutory minimum." (R. 78 at Page ID 329-30). Jackson also waived his right to collaterally attack his guilty plea, conviction, and sentence except for claims of ineffective assistance of counsel. (*Id.* at Page ID 330). At his July 23, 2018 sentencing, Jackson was sentenced to a total term of imprisonment of 300 months. (R. 90). Judgment was entered on July 24, 2018. (R. 92). At the end of the sentencing hearing, Jackson was advised by the Court verbally and in writing of his right to appeal. (R. 136 at Page ID 574). Jackson did not appeal to the Sixth Circuit Court of Appeals.

On July 24, 2019, the Clerk of Court received and filed Jackson's § 2255 Motion. (R. 114). Jackson subsequently filed a Memorandum (R. 120) and a Declaration under penalty of perjury (R. 126) in support of his § 2255 Motion. Jackson raises various grounds in his § 2255 Motion filings claiming ineffective assistance of counsel: 1) a claim that Jackson's counsel was ineffective in failing to file a notice of appeal as directed (R. 114 at Page ID 478); 2) various ineffective assistance of counsel claims related to Jackson's sentencing (*id.* at Page ID 479-80; R. 120 at Page

ID 503-06); and 3) a claim that counsel was ineffective in permitting Jackson to plead guilty to a violation of 18 U.S.C. § 924(c)(1) without the requisite showing by the Government and without Jackson's full understanding of the elements of the offense (R. 114 at Page ID 482; R. 120 at Page ID 505-08).

The United States filed a Response to Jackson's § 2255 Motion. In its Response, the United States argued that Jackson's claim that his attorney was ineffective in not filing an appeal as directed was without foundation (R. 142 at Page ID 628); that Jackson's counsel cannot be held ineffective for failing to argue a law that was not enacted at the time of his sentencing (*id.* at Page ID 631); that Jackson's claim that counsel was ineffective in permitting Jackson to plead guilty to a violation of 18 U.S.C. § 924(c)(1) is "without legal or factual support, contrary to the charged conduct, contrary to the Sixth Circuit Pattern Jury Instructions for that offence, and more importantly contrary to the facts in his Plea Agreement" (*id.*); that Jackson's claim that counsel was ineffective in failing to request a concurrent sentence was a mere allegation that was unsupported by the Sentencing Guidelines (*id.* at Page ID 629); and that Jackson's counsel's handling of his classification as a career offender was not ineffective (*id.* at Page ID 630). In support of the Guideline's argument, the United States provided an Affidavit from Jackson's trial counsel, Pamela Perlman. (R. 142-1). Although the Court permitted Jackson an opportunity to file a reply (R. 143), Jackson did not file a reply.

An evidentiary hearing was scheduled as to Jackson's first claim that counsel failed to file a notice of appeal as directed. (R. 165). Attorney Kerry Neff was appointed to represent Jackson for purposes of the evidentiary hearing. (R. 179). The Court heard testimony from Jackson and former counsel Pamela D. Perlman, and arguments of counsel. (*Id.*). Following the hearing, Jackson's § 2255 Motion was taken under advisement.

## II. ANALYSIS

### A. Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Because all of Jackson's asserted grounds argue that his attorney was ineffective in violation of his Sixth Amendment right to effective assistance of counsel, the standard from *Strickland v. Washington*, 466 U.S. 668 (1984) guides this Court's review. To succeed on an ineffective assistance of counsel claim, Jackson must establish by a preponderance of the evidence both deficient performance and that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. at 687; *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

To prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms . . . considering all the circumstances." *Id*. at 688. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. When assessing counsel's

performance, the Court must make "every effort . . . . to eliminate the distorting effects of hindsight, . . . . and to evaluate the conduct from counsel's perspective at the time." *Id*.

To prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Courts may approach the *Strickland* analysis in any order and an insufficient showing on either prong ends the inquiry. *Id*. at 697. ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . . that course should be followed.").

The *Strickland* analysis applies to ineffective assistance claims involving the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). During that process, counsel's assistance may be constitutionally deficient when, as in *Hill*, a defendant enters a guilty plea after receiving incorrect advice from his attorney. *Id.* at 59. Counsel's assistance may also be constitutionally deficient when a defendant rejects a plea offer based on incorrect advice. *Lafler v. Cooper*, 566 U.S. 156, 175 (2012).

**B. Jackson's Grounds for Relief – Ineffective Assistance of Counsel**

**1. Failure to File a Notice of Appeal as Directed**

Jackson's first ground is that counsel was ineffective for failing to file a notice of appeal as directed. "[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request,

is a *per se* violation of the Sixth Amendment." *Campbell v. United States*, 686 F.3d 353, 358 (6th Cir. 2012) (quoting *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)). Failing to file a notice of appeal when a defendant expressly requests that one be filed satisfies both prongs of the ineffective assistance of counsel test of *Strickland*. *See Campbell*, 686 F.3d at 357 (discussing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). In such cases, prejudice is presumed. *Ludwig*, 162 F.3d at 459. It is inappropriate to inquire whether any appeal would be successful. *Peguero v. United States*, 526 U.S. 23, 28 (1999). The remedy for this type of *Strickland* violation is a delayed appeal. *Campbell*, 686 F.3d at 360; *Johnson v. United States*, 364 F. App'x 972, 975-76 (6th Cir. 2010).

Jackson asserted that, following his sentencing, he directed Attorney Perlman to "have an appeal perfected and forwarded to the appellate court." (R. 114 at Page ID 478). In his Memorandum in support of his § 2255 Motion, Jackson again indicated that he specifically requested that Attorney Perlman file a notice of appeal, that Attorney Perlman advised him of the risk that he could receive a much greater sentence if he appealed, and that Attorney Perlman then "failed to file a notice of appeal." (R. 120 at Page ID 503). The United States responded to Jackson's § 2255 Motion, attaching an Affidavit of Attorney Perlman. (R. 142). The Affidavit filed by the Government states that Attorney Perlman met with Jackson following the sentencing and "truthfully advised Defendant Jackson that if he appealed, and won a resentencing, he could face being sentenced to even more time." (R. 142-1 at Page ID 639). Attorney Perlman included in her Affidavit that she subsequently received a text from one of Jackson's family members directing her to file an appeal. (*Id.* at Page ID 640). She then called the jail to speak to Jackson directly to discuss whether he would like her to file an appeal. (*Id.*). Attorney Perlman stated that "Jackson verified he did not want to appeal on the phone call with [counsel]" after Attorney

Perlman repeated to Jackson the conversation they had after his sentencing, advising him of the risks of appealing his sentence. (*Id.*).

The parties do not dispute that Jackson's sister contacted Attorney Perlman to request that Attorney Perlman file an appeal on Jackson's behalf, at Jackson's request. The subsequent conversation—in which Attorney Perlman states that after conferring with Jackson directly, he confirmed to her he no longer wanted to appeal his sentence—appeared to be in dispute. Jackson did not describe this conversation in his § 2255 Motion (R. 114), his Memorandum in support of his § 2255 Motion (R. 120), or his Declaration under penalty of perjury (R. 126). Given this discrepancy, an evidentiary hearing on the matter was conducted.

Attorney Perlman testified in conformity with her Affidavit that after sentencing she saw no grounds, in her professional opinion, for an appeal. (R. 181 at Page ID 784). Attorney Perlman also testified in conformity with her Affidavit that, following receipt of Jackson's sister's text message requesting that counsel file an appeal, counsel arranged to speak with Jackson directly. (*Id.* at Page ID 785). Attorney Perlman stated that during that conversation, she instructed Jackson that he had received a sentence less than the Guidelines range, and that he could receive a harsher sentence if granted new sentencing on appeal. (*Id.*). Attorney Perlman testified that Jackson then instructed her not to file the appeal. (*Id.*).

Of note, Attorney Perlman also testified at the evidentiary hearing to multiple conversations she had with Jackson via text message following the sentencing and following her receipt of the text from Jackson's sister, and in none of which did Jackson mention an appeal or failure to file an appeal. (R. 181 at Page ID 785-86). On one occasion, Attorney Perlman testified that Jackson requested a copy of his docket sheet and that communication mentioned nothing about an appeal. (*Id.* at Page ID 785). On another occasion a month later, Attorney Perlman testified

that Jackson asked her for a copy of his sentencing transcript, and Attorney Perlman told him that there was not one because there was no appeal. (*Id.* at Page ID 786). According to Attorney Perlman, Jackson did not reply and did not discuss with Attorney Perlman an appeal or the failure to appeal. (*Id.*). Attorney Perlman then testified to two other subsequent occasions on which she communicated with Jackson and in which Jackson did not mention his appeal or any lack of appeal. (*Id.*).

Jackson testified that he asked his sister to tell Attorney Perlman to appeal. Jackson also testified that he did not recall having any further contact with Attorney Perlman after his sister told him that she had done so. (*Id.* at Page ID 766).

The Supreme Court in *Flores-Ortega* set forth a three-part analysis for ineffective assistance of counsel claims regarding the failure to file a notice of appeal. First, the court must determine whether the defendant gave counsel express instructions regarding an appeal. *Flores-Ortega*, 528 U.S. at 478. Second, if the court finds that the defendant did not provide express instructions, then it must determine whether counsel consulted with the defendant about an appeal. *Id.* Third, if there was no consultation, then the court must decide whether the failure to consult was objectively unreasonable. *Id.* at 479. Whether or not counsel met his obligation to consult with his client depends on the totality of the circumstances. *Johnson v. United States*, 364 F. App'x at 975 (citing *Flores-Ortega*, 528 U.S. at 480).

It is undisputed that counsel did not file a notice of appeal. However, there is no indication in the record, other than Jackson's "lack of recollection" of a subsequent conversation with Attorney Perlman, that he did not agree with Attorney Perlman's advice that an appeal could result in a higher sentence, and thus chose not to appeal. (*See* R. 181 at Page ID 771).

Upon consideration of the filing and testimony, the Court finds Attorney Perlman's testimony and evidence more credible. The United States relies on evidence from Attorney Perlman that Jackson rescinded the request to appeal that Jackson's sister previously made on his behalf. To support this proposition, the United States provided a sworn Affidavit by Attorney Perlman, and her testimony stated consistently with the Affidavit, that after explaining the risks of an appeal to Jackson, he told her not to file an appeal. This is further supported by Attorney Perlman's testimony of subsequent conversations with Jackson, reconstructed from her records with dates and specific details, in which Jackson did not mention an appeal. (*Id.* at Page ID 785-86). In these conversations, Attorney Perlman testified that Jackson requested his sentencing transcript, his docket sheet, and asked for advice regarding the First Step Act. (*Id.* at Page ID 785-86). Jackson testified that he did in fact ask for his sentencing transcript and the docket sheet, but also testified that he did not recall any contact with Attorney Perlman after the sentencing date. (*Id.* at Page ID 766, 774).

While Attorney Perlman's testimony is complete with dates and details, Jackson testified that he could not remember if conversations occurred or when or where the conversations that he asserted did occur happened. (Page ID 761, 763-64, 766). Jackson testified that he could not recall what the grounds for his appeal would have been. (R. 181 at Page ID 773). Even though *Garza v. Idaho,* 139 S. Ct. 738, 744 (2019), presumes ineffective assistance of counsel when an attorney disregards their client's request to file a notice of appeal, Jackson has not provided sufficient evidence to refute Attorney Perlman's statements that after a phone conversation between Jackson and Attorney Perlman, he no longer wanted counsel to file an appeal, despite a previous request for an appeal made by his sister. *See Pough*, 442 F.3d at 964. Thus, there is no evidence that an appeal was requested.

Under the second prong of *Flores-Ortega*, courts must ask "whether counsel in fact consulted with the defendant about an appeal." 528 U.S. at 478. However, circumstances may reasonably lead an attorney to believe that consultation is unnecessary. *Id.* at 480. To determine if circumstances may reasonably have led counsel to believe that consultation is unnecessary, courts must "consider[] all relevant factors." *Id.* It is "highly relevant[,]" however, that a defendant pled guilty, because "a guilty plea reduce[s] the scope of potentially appealable issues . . . . and may indicate that the defendant seeks an end to judicial proceedings." *Id.* As stated above, there is ample evidence that Attorney Perlman did consult with Jackson regarding an appeal. Jackson testified that he spoke with Attorney Perlman both before and after sentencing regarding filing an appeal. (R. 181 at Page ID 761-62). In his § 2255 Motion, Jackson stated he specifically requested that Attorney Perlman file a notice of appeal, and that Attorney Perlman counseled him he could receive a much greater sentence if he appealed. (R. 120 at Page ID 503). In both her sworn Affidavit and her testimony, Attorney Perlman stated that after explaining the risks of an appeal to Jackson, he told her not to file an appeal. Jackson does not directly contradict this testimony. Thus, the Court finds that it is undisputed that not only did Jackson not demonstrate he instructed her to file a notice of appeal, but also that Attorney Perlman did consult with Jackson about an appeal.

Jackson has failed to establish by a preponderance of the evidence that Attorney Perlman provided constitutionally deficient assistance by failing to file a notice of appeal. Because Jackson has not satisfied the deficiency prong, the Court need not consider the prejudice prong. *See Strickland*, 466 U.S. at 697. Therefore, Jackson is not entitled to relief on this claim under § 2255, and his claim must fail.

**2. Guilty Plea to 18 U.S.C. § 924(c)(1)**

Jackson's second ground is that there was no evidence that Jackson "'use[d] or carrie[d] a firearm during and in relation to a drug trafficking crime[']; nor 'possess[ed] a firearm in furtherance of a drug trafficking crime.[']" (R. 120 at Page ID 507). Jackson states that his attorney explained to him that "it was enough that the firearms were located in the residence near the drugs" and that while he admitted in his Plea Agreement that the firearms were used in furtherance of drug trafficking, this was false and a result of his lack of understanding of the elements of the offense. (*Id.* at Page ID 508). Jackson states there are no facts that show Jackson or his co-conspirator used or were alleged to use the firearms when the drugs were sold or to protect the drugs. (R. 114 at Page ID 483). He argues that had he been made aware of the elements required for this offense, he would not have pled guilty. (R. 120 at Page ID 508). Jackson argues that his counsel's failure to discuss the elements of this offense thus caused him to make his plea unintelligently and unknowingly. (R. 126 at Page ID 529).

When a defendant enters a plea agreement on advice of counsel, the test for whether the plea was voluntary turns on whether "counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)) (internal quotation marks omitted). To prove counsel was ineffective in this context, Jackson must 1) demonstrate deficient performance by showing his attorney's advice was not within the range of competency demanded, and 2) demonstrate prejudice by showing that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1969 (2017) (quoting *Hill*, 474 U.S. at 56-59).

Key to Jackson's claims is the notion that Attorney Perlman's advice that Jackson plead guilty to the gun charge fell below the objective standard of reasonableness. The Sixth Circuit has held that "[b]y requiring that the possession be 'in furtherance of' the crime, Congress intended a specific nexus between the gun and the crime charged[,]" which reaches "individuals who possess a firearm for the purpose of aiding or furthering a crime of violence or drug-trafficking crime." *United States v. Maya*, 966 F.3d 493, 499 (6th Cir. 2020) (citing *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)). This includes, for example, the firearm being "strategically located so that it is quickly and easily available for use." *Mackey*, 265 F.3d at 462.

Jackson admitted in the plea agreement that the United States could establish the essential elements of the offense beyond a reasonable doubt. (R. 78 at Page ID 325). Jackson also admitted that guns were found in a car driven by Jackson in close proximity to the drugs and to Jackson, and in his residence in close proximity to the drugs. (*Id*. at Page ID 326). During his plea colloquy, Jackson confirmed that he had carefully reviewed the factual descriptions in the plea agreement, that the facts in the plea agreement accurately described his conduct, and that he admitted to that conduct. (R. 137 at Page ID 599). "Absent clear and convincing evidence to the contrary, a defendant is bound by his or her plea agreement and representations made under oath during a plea colloquy." *Morris v. United States*, Case Nos. 1:14-cv-31, 1:12-cr-91-1, 2017 WL 1088289 at *2 (E.D. Tenn. Mar. 21, 2017) (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Given that Jackson admitted the government could prove the elements of the offense and given that case law supports that the factual circumstances to which Jackson admitted could satisfy the elements of that offense, Jackson is unable to show by a preponderance of the evidence that his attorney incorrectly advised him as to the elements of this offense and whether his conduct was sufficient

to meet the elements of the offense. Because Jackson has not satisfied the deficiency prong, the Court need not consider the prejudice prong. *See Strickland*, 466 U.S. at 697.

**3. Failures in Calculation of Sentence**

Finally, Jackson makes several vague claims that his attorney was ineffective in failing to get him a better sentence for various reasons. Jackson argues his counsel was ineffective (1) in allowing his sentence to be enhanced twice for the same firearm under the plea agreement, (2) for not requesting that his federal sentence run concurrently with his state sentence, and (3) for failing to know of and argue for the application of the not-yet-enacted First Step Act.

To begin, each of Jackson's ineffective assistance of counsel arguments in relation to the imposition of his sentence—while couched as claims of ineffective assistance of counsel—are challenges to how Jackson's sentence was calculated. In his Plea Agreement, Jackson expressly waived the ability to challenge his sentence on appeal by collateral attack. (R. 78 at Page ID 330). "Federal case law is quite clear that a defendant who has agreed to waive any direct appeal or collateral attack to his sentence may not assert ineffective assistance of counsel as a means to 'end run' around the waiver provisions of his plea agreement with the Government." *United States v. Thompson*, No. CIV.A. 3:08CV-306-C, 2008 WL 6506506, at *13 (W.D. Ky. Nov. 7, 2008). As Jackson's claims run to the issue of sentencing, and not to the voluntariness of the plea or waiver, he is precluded from using a claim of ineffective assistance of counsel merely as a vehicle to assert them. *See id.* However, even when analyzed as ineffective assistance of counsel claims, each of Jackson's arguments on counsel's alleged ineffective assistance in regard to the imposition of his sentence fail.

First, Jackson argues that his counsel allowed him to enter into a plea agreement that violated the double jeopardy clause in allowing his sentence to be enhanced twice for the same

firearm. (R. 114 at Page ID 479). Jackson argues that his sentence was enhanced when he pled guilty to possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) and was enhanced again under the Sentencing Guidelines for a career offender who also possessed a firearm. (*Id.*). Jackson argues that because the career offender Guidelines range already considers the § 924(c)(1) conviction, considering it a second time for the purpose of sentencing is double counting. (*Id.* at 480). To support his claim, Jackson relies on an email exchange between Attorney Perlman and the Probation Officer, in which Attorney Perlman at Jackson's request, questions the base offense calculation in the Presentence Investigation Report ("PSR") and why it differed from that in the Plea Agreement. (*Id.* at Page ID 482). Jackson alleges that Attorney Perlman was ineffective in allowing the PSR writer to calculate his sentence with inclusion of career offender status.

Jackson argues that the Sentencing Guidelines "explain[] that if a convicted defendant is found to be a career offender, and a firearm is calculated into the Guideline range, than [sic] the § 924(c)(1) offense is not to be considered a second time for purposes for sentencing." (R. 114 at Page ID 480). Jackson is mistaken and misunderstands. The applicable guidelines, however, provide that:

> (c) If the defendant (1) was convicted of violating section 924(c) . . . . and (2) as a result of that conviction (alone or in addition to another offense of conviction), is determined to be a career offender under § 4B1.1 (Career Offender), the guideline sentence shall be determined under § 4B1.1(c). **Except for** §§ 3E1.1 (Acceptance of Responsibility), 4B1.1, and 4B1.2 (Definitions of Terms Used in Section 4B1.1), Chapters Three and Four shall not apply to that count of conviction.

U.S.S.G. § 2K2.4 (emphasis added). Subsection 4B1.1(c) of the Sentencing Guidelines further provides that:

> (c) If the defendant is convicted of 18 U.S.C. § 924(c) or § 929(a), and the defendant is determined to be a career offender under subsection (a), the applicable guideline range shall be determined as follows: . . . (2) In the case of multiple counts of

> conviction in which at least one of the counts is a conviction other than a conviction for 18 U.S.C. § 924(c) or § 929(a), the guideline range shall be the greater of– (A) the guideline range that results by adding the mandatory minimum consecutive penalty required by the 18 U.S.C. § 924(c) or § 929(a) count(s) to the minimum and the maximum of the otherwise applicable guideline range determined for the count(s) of conviction other than the 18 U.S.C. § 924(c) or § 929(a) count(s); and (B) the guideline range determined using the table in subsection (c)(3).

U.S.S.G. § 4B1.1. Using these Guidelines, as the Probation Officer did, Jackson's guideline range was calculated to be 322 months to 387 months, which was explained to Attorney Perlman and included in the PSR. Jackson's interpretation does not comport with what the Guidelines require. Counsel cannot be found to be constitutionally ineffective for failing to raise meritless issues. *See Greenman v. United States*, No. 3:16-CV-434-TAV, 2019 WL 2569621, at *4 (E.D. Tenn. June 21, 2019) (citing *Maples v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).

Further, the record shows that Attorney Perlman did object to how his sentence was calculated. The PSR notes that Jackson objected to the base offender level for career offenders, claiming it should have been listed as 34, as in the Plea Agreement, rather than 37, as in the PSR. The email Jackson relies on also supports that Attorney Perlman was advocating for Jackson regarding the sentencing calculation. (R. 114 at Page ID 482). The PSR writer responded to Attorney Perlman's email with a detailed explanation that the Guidelines were properly applied. (*Id.*). In addition, Attorney Perlman filed a Motion for downward variance, in which she argued that the PSR differed from what the United States and Jackson agreed upon in the Plea Agreement to recommend, and she requested a downward variance in Jackson's sentence as a result. (R. 87). District Judge Caldwell found that Jackson's objections did not require a ruling by the Court and adopted the PSR and Guidelines as calculated. (R. 90 at Page ID 371). District Judge Caldwell did, however, grant Attorney Perlman's motion in part, as the sentence imposed was a slight variance. (*Id.*). Given her objection and motion, Jackson has failed to show how Attorney

Perlman's representation of Jackson was deficient regarding his career offender determination. Jackson has further failed to show that the Court would have accepted any such argument, as the record plainly shows it was not.

Second, Jackson argues that his counsel should have requested that his federal sentence run concurrent to his undischarged state sentence. (R. 120 at Page ID 503). Jackson cites to U.S.S.G. § 5G1.3 as granting the court "the ability to impose concurrent or consecutive sentences with undischarged state terms of imprisonment." (*Id.*).

As noted by the United States, U.S.S.G. § 5G1.3(d) (Policy Statement) provides that: "In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." The application of this section is explained in the Commentary to U.S.S.G. § 5G1.3, which provides that:

> Subsection (d) applies in cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked. Consistent with the policy set forth in Application Note 4 and subsection (f) of § 7B1.3 (Revocation of Probation or Supervised Release), the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.

According to Jackson's PSR, Jackson was paroled on a state charge in November of 2015 and that parole was not set to expire until December 30, 2029. (Presentence Investigation Report, pp. 15-16). Jackson testified that he was on state parole at the time the events that gave rise to his federal conviction occurred. (R. 181 at Page ID 773). The Sentencing Guidelines thus do not support Jackson's claim that Attorney Perlman was ineffective for asking for his sentences to run concurrently. The Commentary expressly recommends that in cases in which a defendant is on

parole at the time of the offense, the sentence be imposed consecutively. U.S.S.G. § 5G1.3. Jackson has, therefore, failed to show by a preponderance of the evidence that Attorney Perlman not presenting such a request fell below the objective standard of reasonableness. In addition, the United States argues that had Attorney Perlman argued for concurrent sentences, "[t]he United States would have undoubtedly opposed such a request." (R. 142 at Page ID 630). Jackson has thus failed to show that even if Attorney Perlman had asked for such relief, the outcome of the proceedings would have been any different. As he has failed to show either deficient performance or prejudice, Jackson's claim must fail.

Finally, Jackson's argument that Attorney Perlman should have known and argued for his entitlement to relief under the First Step Act is also without merit. Jackson argues that his "counsel should have been aware of the impending change to the definition of 'serious drug felony' . . . in the First Step Act and [counsel should have] requested that any sentencing activities be held in abeyance pending the imposition of the Act" or "at the very least [counsel] should have known that he would be considered in the pipeline for any consideration for the First Step Act of 2018, had his case been pending on direct appeal." (R. 120 at Page ID 505). Jackson admits that his attorney "did in fact ultimately move the Court for a downward variance and request a base level offense of 34," however, he argues that "better practice" would have been to argue that the First Step Act mandated a lower base offender level. (*Id*. at Page ID 506).

Jackson was sentenced on July 23, 2018. The First Step Act was enacted on December 21, 2018. "[F]ailure to perceive or anticipate a change in the law . . . . generally cannot be considered ineffective assistance of counsel." *Thompson v. Warden*, 598 F.3d 281, 288 (6th Cir. 2010). Counsel's failure to be aware of an impending change of law is not ineffective assistance of counsel, unless distinctly foreshadowed by precedent. *Id.; See also United States v. Brown-*

*Lovelace*, No. 0:17-CR-10-DLB-2, 2019 WL 7666995, at *2 (E.D. Ky. Dec. 12, 2019) (finding counsel was not deficient for failing to be familiar with the possibility of enactment of the First Step Act). Jackson thus fails to meet his burden of showing that counsel rendered constitutionally deficient performance in her inability to predict a change in the law.

For the reasons above, Jackson has failed to show that Attorney Perlman's assistance regarding his sentencing was deficient in any way. Because Jackson has not satisfied the deficiency prong as to any of these claims, the Court need not consider the prejudice prong. *See Strickland*, 466 U.S. at 697.

## III. CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate may issue only if a defendant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court explained this requirement in *Slack v. McDaniel*, 529 U.S. 473 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought under 28 U.S.C. § 2255). Where a district court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. at 484. When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that

jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists would not debate the denial of Jackson's § 2255 Motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, it also will be recommended that a certificate of appealability be denied upon the entry of a final order in this matter.

## IV. CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, **IT IS RECOMMENDED** that:

1) Jackson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 114) **be denied;**

2) a Certificate of Appealability **be denied** in conjunction with the entry of a final order denying Jackson's § 2255 Motion;

3) a Judgment in favor of the United States **be entered** with the entry of a final order denying Jackson's § 2255 Motion; and

4) the related collateral civil action **be dismissed and stricken** from the active docket of this Court.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. **Jackson is reminded that any objections he may have must be filed by him and will not be filed by Attorney Kerry Neff on his behalf because**

**Attorney Neff was appointed for purposes of the evidentiary hearing only and relieved of his duties as Jackson's counsel following the evidentiary hearing. (R. 179 at Page ID 752, ¶ 2).** Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 18th day of August, 2023.




**Signed By:**
***Candace J. Smith***
**United States Magistrate Judge**

J:\DATA\habeas petitions\2255 IAC\17-60-KKC Jackson R&R.55hd.docx